**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ALAMA ROBINSON, | 3:17-cv-00611-HDM-WGC |
| Plaintiff, | ORDER |
| v. | |
| STATE OF NEVADA, and COUNTY OF LYON, | |
| Defendants. | |

Before the court is defendant State of Nevada, Division of Public and Behavioral Health's (the "Division") motion for summary judgment (ECF No. 57). Plaintiff responded (ECF No. 63) and the Division replied (ECF No. 65). Also before the court is defendant Lyon County's motion for summary judgment (ECF No. 58). Plaintiff responded (ECF No. 64) and Lyon County replied (ECF No. 70). For the reasons discussed below, the motions for summary judgment (ECF Nos. 57, 58) are granted.

**I.  BACKGROUND AND PROCEDURAL HISTORY**

This is an action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The case alleges causes of action for racially hostile work environment, discrimination, retaliation, and intentional interference with contractual relations (against Lyon County).

Plaintiff is a Certified Drug and Alcohol Counselor. In 2015, Plaintiff contracted with the Division to provide services in the Lyon County Jail as a member of Lyon County's Forensic Assessment Services Triage Team ("FASTT"). FASTT teams are collaborative initiatives intended to increase mental health treatment for incarcerated people and those at risk for incarceration. The State does not own, operate, or supervise the Lyon County Jail and FASTT is not a State-run program. Partnership Carson City ("PCC"), a private, non-profit organization

1

started the first FASTT program in Carson City. PCC contracted with Community Counseling Center ("CCC") of Carson City, another private, non-profit, to staff the FASTT team with mental health professionals. Plaintiff became involved with the FASTT team in Carson City through his previous job at CCC.

In 2015, Lyon County expressed an interest in starting a FASTT program. According to plaintiff, personnel from Lyon County and the Division observed the FASTT program in Carson City and asked plaintiff to help start the program in Lyon County. The Division offered to fund a position for a caseworker to support Lyon County's efforts. The Division did not have anyone with the particular skills to fill this role, so it created a contract position. Tina Gerber-Winn, Agency Manager of the Division, confirmed that the contract was offered to plaintiff because of his specialized experience with a FASTT program.

Plaintiff provided services under contract as a counselor in Lyon County Jail from July 2015 to March 2016. His contract provided that he was eligible to bill the Division for forty hours per week at $23.80 per hour for his counseling services. He spent most of his time with the FASTT program, but occasionally provided counseling services for the Mobile Outreach Safety Team ("MOST"). During this time, plaintiff also provided counseling services through Rite of Passage, a private, non-profit organization.

Plaintiff alleges that during the eight months he provided services in the Lyon County Jail, he was discriminated against based on race and sex. In particular, he alleges that Deputy Casey Johnson, a County employee, made discriminatory remarks to him. He contends he was denied access to areas of the jail and forced to wait unreasonable periods of time for interior security doors to be opened. Plaintiff further alleges that Lyon County personnel accused him of having inappropriate boundaries with women, which led to Lyon County no longer allowing him to provide services in the Jail. Plaintiff alleges that the Division failed to prevent the harassment and discriminated against him by transferring him to Carson City for one to two weeks.

2

On October 5, 2017, Plaintiff, Alama Robinson, filed a complaint against the State of Nevada under Title VII and 42 U.S.C. § 1983. (ECF No. 1.) On November 11, 2017, the State of Nevada moved to dismiss the complaint for failure to state a claim upon which relief may be granted. (ECF No. 6.) After a hearing on the State's motion to dismiss, the court dismissed, with prejudice, plaintiff's § 1983 claim and dismissed, without prejudice, plaintiff's Title VII claim. On January 17, 2018, plaintiff filed a First Amended Complaint naming both the State of Nevada and Lyon County as defendants. (ECF No. 19.)

In the First Amended Complaint, plaintiff asserts four causes of actions, specifically, plaintiff alleges hostile work environment/discrimination, discrimination, retaliation, and intentional interference with contractual relations under state law. (*See id.*) The State of Nevada then filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim. (ECF No. 23.) The court denied the motion without prejudice. (ECF No. 42.) Discovery concluded in this matter on November 27, 2018. (ECF No. 55.) Both defendants now move for summary judgment. (ECF Nos. 57, 58.)

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *Lynn v. Sheet Metal Workers Int'l Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a

3

genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978).

## III. DISCUSSION

The Division moves for summary judgment on the basis that plaintiff was an independent contractor and therefore precluded from recovery under Title VII. Lyon County also argues that it was not plaintiff's employer and plaintiff was an independent contractor and therefore plaintiff's Title VII claims necessarily fail.

Title VII protects employees, not independent contractors. *See* 42 U.S.C. § 2000e(f) ("The term 'employee' means an individual employed by an employer…."); *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir. 1980); *Murray v. Principal Financial Group, Inc.*, 613 F.3d 943, 945 (9th Cir. 2010).

When determining whether an individual is an independent contractor or an employee for purposes of Title VII, a court should evaluate "the hiring party's right to control the manner and means by which the product is accomplished." *Murray*, 613 F.3d at 945; *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992). The factors relevant to this inquiry, as identified by the Supreme Court are: (1) the skill required; (2) the source of the instrumentalities and tools; (3) the location of the work; (4) the duration of the relationship between the parties; (5) whether the hiring party has the right to assign additional projects to the hired party; (6) the extent of the hired party's discretion over when and how long to work; (7) the method of payment; (8) the hire party's role in hiring and paying assistants; (9) whether the work is part of the regular business of the hiring

party; (10) whether the hiring party is in business; (11) the provision of employee benefits; and (12) the tax treatment of the hired party. *Darden*, 503 U.S. at 323-24.

The following facts are undisputed, based on the evidence viewed in the light most favorable to plaintiff. Plaintiff's employment agreement with the State of Nevada classifies him as an "independent Provider," and states that "[n]othing contained in this Provider Agreement shall be deemed or construed… to create relationships of an employer-employee…" (ECF No. 58, Ex. 3.) While instructive, this fact alone does not dispose of the court's inquiry. *See Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1293 (9th Cir. 1999) (language in a contract "though not dispositive, reflects the parties' intention that Adcock would have been an independent contractor, not an employee"). During his deposition, plaintiff also testified that he was a contractor, not an employee. (ECF No. 58, Ex. 1.)

The employer's right to control the manner and means of the person's work and day-to-day control of the person's work are crucial factors in an employee versus independent contractor analysis. As to the Division, it did not control the fundamental manner and means by which plaintiff provided counseling services to his patients, as plaintiff used his independent discretion to assess each individual, determine which form of counseling was appropriate, develop a plan of care, and refer patients to other providers. Plaintiff's daily routine lacked Division oversight or control. He managed his counseling services independently, subject only to the County Jail's restrictions for the facility. With respect to plaintiff's pay, benefits, and taxes, he was treated as a contractor. He was paid an hourly rate for his counseling services. He did not receive a set salary, paid leave, sick time or vacation. Plaintiff was not provided health or retirement benefits and was not covered by insurance or workers' compensation; plaintiff received no State employee benefits whatsoever. Further, plaintiff maintained control over when and how long he worked. His contract provided for a defined period of work. Plaintiff's duties required a level of skill consistent with a contract position. Plaintiff was not involved in the routine business of the Division. The Division exercised minimal control over the location of plaintiff's work and the State did not have the right

to assign projects outside the scope of plaintiff's independent contractor agreement. The Division did not control the most important aspects of Plaintiff's work as a counselor. Plaintiff took full advantage of his flexibility as a contractor, fluctuating the number of hours he worked and electing to provide counseling services through other entities. He was free from employment formalities and received none of the benefits enjoyed by Division employees.

On plaintiff's claim against Lyon County it is not disputed that Lyon County did not have any control or ability to promulgate plaintiff's work parameters or to set the conditions of plaintiff's employment, including, but not limited to, compensation, benefits, hours, day to day supervision, or employee discipline, up to and including termination. In plaintiff's answers to Lyon County's requests for admissions he admitted that he did not have a contract of employment with Lyon County, he was never provided a copy of Lyon County's personnel policies, he was never compensated for any of his work by Lyon County, he was not provided insurance benefits by Lyon County, he did not receive retirement benefits from Lyon County. He did not submit an application for employment to Lyon County, he was never formally interviewed by anyone from Lyon County, he was not hired by Lyon County, and Lyon County was not involved in the negotiation of his compensation. Lyon County did not withhold any portion of the Plaintiff's earnings for taxes. Plaintiff never submitted any time cards to Lyon County, he was not subject to Lyon County's sick leave or vacation leave policy, Lyon County did not provide him with any business cards, Lyon County did not provide him with a secretary, a mobile phone, a uniform, or a vehicle, he was not authorized to drive a Lyon County owned vehicle, and he was never asked to drive a Lyon County vehicle. Lyon County did not have any control or ability to promulgate plaintiff's work parameters or to set the conditions of plaintiff's employment, including, but not limited to, compensation, benefits, hours, day to day supervision, or employee discipline, up to and including termination.

Examining the factors and the evidence in the record and viewing the evidence in the light most favorable to plaintiff, the court concludes that plaintiff's relationship with the State of Nevada

and Lyon County was that of an independent contractor, not an employee. Any factors that might weigh in favor of employee status, are insufficient to raise a material issue of fact that plaintiff was an employee of either the State of Nevada or Lyon County.

Therefore the court concludes that plaintiff is not protected by Title VII, and defendants are entitled to summary judgment.

### 1. Intentional Interference with Contractual Relations Claim

Having dismissed all federal claims, the court declines to exercise its supplemental jurisdiction against Lyon County on plaintiff's state law intentional interference with contractual relations claim against Lyon County. *See* 28 U.S.C. § 1367; *see also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).

## IV. CONCLUSION

For the reasons set for above, defendants State of Nevada and Lyon County's motions for summary judgment (ECF Nos. 57, 58) are **GRANTED**. Plaintiff's claims against the State of Nevada and Lyon County on plaintiff's Title VII claims are dismissed with prejudice. Plaintiff's claim against Lyon County on the state law claim of intentional interference with contractual relations is dismissed without prejudice.

The Clerk of the Court shall file a judgment in favor of defendants and against plaintiff in accordance with this order.

**IT IS SO ORDERED**.

DATED: This  25th  day of June, 2019.

_____
UNITED STATES DISTRICT JUDGE